DeALMEIDA, P.J.T.C.
The central issue in this case is whether the weekly publication distributed by plaintiff ADVO, Inc. (“ADVO”) during the period at issue was a “newspaper” within the meaning of N.J.S.A. 54:32B-8.30. Resolution of this question will determine whether receipts from the sale of advertising in the publication were exempt from sales tax. For the reasons described more fully below, the court concludes that during the period at issue plaintiff published a newspaper within the meaning of the statute. Plaintiff, therefore, is entitled to a refund of the sales tax it collected on its advertising revenue for distribution to the customers who paid the tax. See N.J.S.A. 54:32B-20(a). As a result of this conclusion, the court reverses defendant Director, Division of Taxation’s final determination denying plaintiffs refund request.
I. Findings of Fact
The court makes the following findings of fact based on the submissions of the parties on cross-motions for summary judgment. During the period January 14, 2007 to April 28, 2007, plaintiff, a Delaware corporation, published a free, weekly, four-page publication entitled Shop Wise. Prior to January 14, 2007, Shop Wise contained only advertising content. By letter dated April 7, 2005, plaintiff requested a ruling from the Director, Division of Taxation on various sales and use tax issues. ADVO’s ruling request sought guidance on whether contemplated modifications to Shop Wise would qualify the publication as a “newspaper” within the meaning of N.J.S.A 54:32B-8.30, which exempts from sales tax revenue from advertisements to be published in newspapers. Plaintiff requested a ruling that “[ajssuming ADVO limits the advertising space on its Shop Wise ® publication to 90 percent or less, ADVO’s Shop Wise ® publication will qualify as an exempt newspaper.” In a May 27, 2005 response to the ruling request, the Director advised that if Shop Wise contained more than 10% non-advertising matter and met the other applicable regulatory requirements the publication would qualify as a newspaper under *507 the statute and N.J.A.C. 18:24-1.2 (2007), a regulation interpreting N.J.SA 54:32B-8.30.
ADVO thereafter reformatted Shop Wise, effective January 14, 2007, and began devoting one page of the four-page publication to non-advertising materials. In making the decision to reformat Shop Wise, ADVO estimated that the conversion would cause plaintiff to lose at least $500,000 in annual revenue attributable to lost advertising income. Plaintiff published each issue of Shop Wise on both sides of a single piece of paper measuring approximately 11 inches by 17 inches. When folded in half, the sheet of paper read in book format and consisted of four 8.5 inch by 11 inch pages of print, including a front cover, a back cover and two inside pages which faced each other. Of the four pages, three pages were dedicated entirely to advertising, apart from the masthead on the front page which included the Shop Wise name and date. One inside page contained only written text in article format accompanied by photographs. Thus, approximately 25% of Shop Wise was not devoted to advertising.
ADVO published sixteen issues of Shop Wise during the sixteen-week period at issue. The inside page containing written text was entitled House & Home. This section consisted of two to four articles concerning home ownership, recipes, gardening, vacations, decorating tips, diet, exercise and other topics. Many of the articles reflected the season in which they appeared. For example, the January 14, 2007 issue featured the article “New Year, New You,” which provided information on calories, nutrition, and dieting to fulfill a new year’s resolution to lose weight. An issue from later that month contained an article on hosting a Super Bowl party, with an accompanying recipe, as well as tips on how to organize a home office. Later issues featured articles on creating a homework-friendly environment for children, overcoming winter doldrums, investing in home renovations, cooking activities for pre-teens, protecting and enjoying antique furniture, Saint Patrick’s Day recipes, organizing the contents of a garage, planning a family Summer vacation, gardening, selecting a personal computer, stress-free birthday party planning, time management tips, and similar topics. Generic photographs related to the subject matter *508 of the adjacent artiele(s) also appeared in the House & Home section. ADVO incurred $50,000 a year in freelance writing fees for the articles.
In addition, each issue of Shop Wise included the Have You Seen Me ® feature consisting of images and information on missing children appearing on a separate card measuring 3.5 inches by 7.5 inches. The card was inserted as a loose item inside each issue of Shop Wise. Beginning in March 2007, the Have You Seen Me ® feature appeared on the back cover of the publication.
Advertising appeared on the remaining three pages of the publication. In addition, numerous advertising inserts, some multi-page compilations, supermarket coupon flyers, and other materials were inserted in each issue of Shop Wise. Those materials were either produced by ADVO or supplied by its advertising customers. Each week, the advertising materials inserted into the publication surpassed Shop Wise by page count, size and volume.
Distribution of Shop Wise was implemented on a geographic basis, with New Jersey divided into eighteen zones. Subdivisions within zones were essentially proprietary boundaries defined by ADVO based on an examination of the neighborhoods contained in a zone. The non-advertising content was the same for all zones in New Jersey. The advertising material and loose inserts, however, would vary by zone or by subdivisions within zones as requested by advertisers wishing to target specific readers. Advertising space on and in Shop Wise was purchased through a bidding process and varied in scope. For instance, a small retailer could elect to have plaintiff distribute advertising materials within a two-mile radius of the retailer’s store to specific neighborhoods that met its targeted demographic profile. A national retailer, on the other hand, could elect to have ADVO distribute advertising material throughout New Jersey. As an alternative to advertising in Shop Wise, ADVO’s customers could purchase advertising space in other publications, such as The Star Ledger, The Record, Asbury Park Press, Trenton Times and the Princeton Packet. These publications also offered customers the option of distribut *509 ing advertisements on loose inserts to be inserted into the publications.
ADVO distributed Shop Wise each week without charge to residential recipients at 2.6 million New Jersey households. Shop Wise was most frequently delivered by the United States Postal Service through bulk mailing, although the publication was sometimes delivered by newspaper carriers and hand delivery in densely populated areas or because of other considerations.
Plaintiff considered advertising receipts from the reformatted Shop Wise to be exempt from sales tax during the relevant period because the publication constituted a newspaper within the meaning of N.J.S.A. 54:32B-8.30. However, in the event that the Director disagreed with this position, plaintiff did not want to expose itself to sales tax liability, penalties and interest and the prospect of injuring business relationships by seeking recovery of those amounts from clients. Accordingly, ADVO charged and collected sales tax on its advertising revenue. Plaintiff thereafter filed a refund claim for the sales tax it collected with the intention of reimbursing its clients if the refund was granted. See N.J.S.A 54:32B-20(a).
II. Procedural History
By letter dated July 15, 2007, ADVO filed a claim for a refund of sales tax in the amount of $1,019,094.41. In a letter dated November 7, 2007, the Director denied plaintiffs refund request. The denial was based on the Director’s determination that Shop Wise did not meet the definition of “newspaper” set forth in N.J.A.C. 18:24-1.2 (2007), which interprets N.J.S.A. 54:32B-8.30, and was instead an advertising “flyer” or advertising service and was not purchased by readers “generally based on an interest in the information contained” in the publication. In addition, the Director stated that Shop Wise was mailed to recipients “solely as a means to distribute advertising” and that “presenting articles on one page of the four page flyer cannot be treated as converting it into a newspaper, magazine or periodical.”
*510 Plaintiff thereafter timely filed a Complaint in this court. After discovery, the parties cross-moved for summary judgment. The court subsequently heard oral argument.
III. Conclusions of Law
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(e). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[WJhen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
“The express intent of the Brill decision was to ‘encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.’ ” Howell Twp. v. Monmouth County Bd. of Taxation, 18 N.J. Tax 149, 153 (Tax 1999) (quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146). The court concludes that this matter is ripe for decision by summary judgment. There are no material facts in dispute between the parties and the validity of the Director’s decision can be determined by application of the law to the undisputed facts.
The court’s analysis is influenced by the familiar principle that the Director’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 *511 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”). However, judicial deference is not absolute. An administrative agency’s interpretation that is plainly at odds with a statute will not be upheld. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008)(citing GE Solid, State, supra, 132 N.J. at 306, 625 A.2d 468).
Additionally, the Sales and Use Tax Act was enacted as a revenue raising measure and is intended to be broadly read. Adamar of New Jersey v. Director, Div. of Taxation, 17 N.J. Tax 80, 85-86 (Tax 1997), aff'd, 18 N.J. Tax 70 (App.Div.1999). Exemptions from tax are narrowly construed and the taxpayer has the burden of establishing the exemption. See Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961); Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J. Tax 338, 349 (Tax 1995).
It is against this backdrop of guiding principles that the court must apply N.J.S.A. 54:32B-8.30 and N.J.A.C. 18:24-1.2 (2007) to the facts of this case. The statute provides that “[r]eceipts from the sales of advertising to be published in a newspaper are exempt from the tax imposed under the Sales and Use Tax Act.” The Legislature did not define “newspaper” for purposes of this exemption. The Director, however, promulgated a regulation setting forth detailed criteria for determining whether a publication is a “newspaper” for purposes of N.J.S.A. 54:32B-8.30. The regulation was adopted pursuant to the Director’s authority to “make, adopt and amend rules and regulations appropriate to the carrying out of’ the sales and use tax statute. N.J.S.A. 54:32B-24.
During the relevant time periods, the regulation provided:
*512 (a) A “newspaper” means a publication which generally conforms to all the following indicia:
1. A newspaper is published in printed or written form at stated short intervals at least 50 times a year;
2. A newspaper is available for circulation among the public, whether or not through paid subscriptions;
3. A newspaper contains information of general interest or reports of current events and contains original or reprinted articles on a variety of topics, photographs, illustrations, advertising matter, legal notices, comic strips, cartoons, editorial comment or other such subject matter;
4. A newspaper does not contain as advertising matter more than 90 percent of its printed area;
5. A newspaper has continuity as to title and the general nature of its content from issue to issue; and
6. A newspaper does not constitute a book, either singly or when successive issues are put together.
(b) Except as inconsistent with (a) above, whether a publication has been or would be classified as one which is entitled to second class mailing privileges by the United States Postal Service will be taken into consideration in the determination of whether or not the publication is a newspaper.
[N.J.AC. 18:24-1.2 (2007).]
This regulation is presumed to be valid. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 384 A.2d 795 (1978); L.B.D. Constr., Inc. v. Director, Div. of Taxation, 8 N.J. Tax 338, 353 (Tax 1986). N.J.AC. 18:24-1.2 was amended effective in 2009 to alter the definition of newspaper for purposes of the exemption statute. The amended regulation is not applicable to the time periods at issue here.
The Director argues that denial of the refund request was justified because Shop Wise was not “a true newspaper” and did not satisfy three of the criteria set forth in N.J.AC. 18:24-1.2 (2007). According to the Director, Shop Wise: (1) was not available for circulation among the public; (2) did not contain information of general interest or reports of current events and did not contain original or reprinted articles on a variety of topics, photographs, illustrations, advertising matter, legal notices, comic strips, cartoons, editorial comment or other such subject matter; and (3) had not been or would not have been classified as entitled to second class mailing privileges by the United States Postal Service.
*513 In addition, the Director contends that to qualify for an exemption, Shop Wise must have met all of the indicia set forth in N.J.A.C. 18:24-1.2(a) (2007). The taxpayer takes the position that the publication’s “general conformity” with the regulation’s criteria was sufficient to establish an exemption. The Director’s strict view of the regulation is contradicted by its plain language. The regulation stated that a publication qualifies for an exemption as a newspaper if it “generally conforms” to each of the criteria of the regulation. N.J.A.C. 18:24-1.2(a) (2007). By the Director’s own language strict satisfaction of each element of N.J.A.C. 18:24-1.2(a) (2007) was not necessary for the exemption to apply. The Director chose to use the phrase “generally conforms” in the regulation. As a result, application of N.J.A.C. 18:24-1.2(a) (2007) to Shop Wise must be made under the “general conformity” standard. The taxpayer was not put on notice that strict compliance with each of the regulatory criteria was necessary to establish the exemption.
Despite the deference that is ordinarily accorded to the Director’s application of his regulations, the court concludes that reversal of the Director’s decision is warranted here. The court concludes that in each instance in which the Director contends that Shop Wise does not generally conform to a criterion in N.J.A.C. 18:24-1.2 (2007), his determination is contrary to the undisputed evidence in the record. As a result, the Director’s decision is arbitrary and unsupported by sufficient evidence and must be reversed.
The disputed regulatory criteria are discussed in turn:
(A) “A newspaper is available for circulation among the public, whether or not through paid subscriptions.” N.J.A.C. 18:24-1.2(a)(2) (2007).
The record contains unrefuted evidence that during the relevant period Shop Wise was mailed each week to residential recipients at 2.6 million New Jersey households. ADVO divided the entire State into eighteen distribution zones for the publication and Shop Wise was regularly distributed in those zones. It is impossible to square these facts with the Director’s determination that the publication was not available for circulation among the public. While it is true that a member of the public could not readily *514 obtain a copy of Shop Wise directly from ADVO or find a copy of the publication at a grocery store, library or newsstand during the relevant period, N.J.A.C. 18:24-1.2(a) (2007) did not condition the exemption on the ability of an interested reader to readily obtain a copy of the publication from the publisher or at any particular location. The regulation required only that the publication be available for circulation to the public. Shop Wise was so available through weekly delivery to millions of households in this State.
Moreover, the fact that Shop Wise was mailed to “resident” addressees and not to individually named readers is of no moment. The exemption applied if the publication was circulated “whether or not through paid subscriptions,” a criterion that implicitly recognized that newspapers are commonly made available to readers who are not specifically identified to the publisher.
(B) “A newspaper contains information of general interest or reports of current events and contains original or reprinted articles on a variety of topics, photographs, illustrations, advertising matter, legal notices, comic strips, cartoons, editorial comment or other such subject matter.” N.J.A.C. 18:24-1.2(a)(3) (2007).
The record contains nearly each issue of Shop Wise distributed by ADVO during the relevant period. The publication contained articles on do-it-yourself projects, decorating, child care, entertaining, gardening, exercise, vacations and related topics. In addition, the publication featured recipes, household safety tips, generic photographs, and public service announcements. The articles and information were often related to the time of year in which they appeared in Shop Wise. The record contains no factual support for the Director’s determination that the publication did not contain “information of general interest” and “original or reprinted articles on a variety of topics.” The topics addressed in a Shop Wise article were of general interest to readers who own or rent homes, enjoy cooking and gardening, collect antiques, plan vacations, have children in school, and others who are engaged in pursuits common to a large number of people.
While it is arguably true that Shop Wise did not contain “reports of current events,” as the Director argues, such reports were not necessary to satisfy the regulatory criterion, which called for “information of general interest or reports of current events.” *515 (emphasis added). The regulation did not require “news or interviews gathered by reporters about current events”, (Dbl2), which the Director argues was necessary to constitute a newspaper. Such a requirement might well have been a reasonable interpretation of the statute. The Director, however, did not include language to that effect in N.J.A.C. 18:24-1.2(a) (2007). The regulation as it existed during the relevant period is presumed to be valid and the requirement that a publication provide only “information of general interest” to qualify as a newspaper was a reasonable interpretation of N.J.S.A. 54:32B-8.30 applicable to the facts before the court.
The Director makes the argument that Shop Wise did not qualify as a newspaper under N.J.A.C. 18:24-1.2(a) (2007) because the publication contained “only general articles on household matters of interest primarily to women” and because “Shop Wise is geared mainly toward women, with general household tips, recipes and family items, rather than the general public.” (Dbl2) (citations to record omitted). Although plaintiff acknowledges that its readers are primarily women, this fact is not relevant to the determination of whether Shop Wise constituted a newspaper during the relevant periods. Nothing in N.J.A.C. 18:24-1.2(a) (2007) suggested that a publication must contain information that appeals equally to readers of both genders or all members of the public to qualify as a newspaper. Many publications that would commonly be understood to be newspapers appeal to readers in a particular geographic area, of a particular political philosophy, religion, interest or financial status. Not every member of the general public is inclined to read The New York Times, The Christian Science Monitor, The Wall Street Journal, or The National Enquirer. Yet, each of these publications contains information of general interest and articles on a variety of topics and would commonly be accepted to be newspapers.
Moreover, the fact that Shop Wise did not contain illustrations, legal notices, comic strips, cartoons, or editorial comment does not defeat an exemption. The regulation did not require that each of the items listed in N.J.A.C. 18:24-1.2(a)(3) (2007) be included in each publication to qualify as a newspaper. The regulation, to *516 which Shop Wise must only have “generally conformed,” can be represented as follows:
The publication must contain
(1) information of general interest or (2) reports of current events and
(a) original or reprinted articles on a variety of topics;
(b) photographs;
(c) illustrations;
(d) advertising matter;
(e) legal notices;
(f) comic strips;
(g) cartoons;
(h) editorial comment or
(i) other such subject matter.
The record firmly established that Shop Wise contained (1) information of general interest and (a) original or reprinted articles on a variety of topics, (b) photographs, and (c) advertising. The publication, therefore, generally conformed to N.J.AC. 18:24-1.2(a) (2007). The court rejects the Director’s attempt to interpret the regulation as if “and” appeared instead of “or” after “editorial comment.” Such an interpretation is directly contradicted by the plain language of the regulation as it existed during the relevant period.[1]
(C) “Except as inconsistent with (a) above, whether a publication has been or would be classified as one which is entitled to second class mailing privileges by the United States Postal Service will be taken into consideration in the determination of whether or not the publication is a newspaper.” N.J.AC. 18:24-1.2(b) (2007).
Application of this criterion to Shop Wise is impossible. During the relevant period, the United States Postal Service did not offer second class mailing privileges to periodicals. The mail classification “Periodicals” was adopted by the United States Postal Service in 1996 in place of second class mailing for publications. See 61 Fed.Reg. 10114 (March 12,1996). N.J.AC. 18:24-1.2(b) (2007) was not updated to reflect this change. This provision of the regula *517 tion, therefore, was effectively a nullity during the relevant period. Because United States Postal Service second class mailing privileges were not available to publications during the relevant period it would not have been possible for Shop Wise or any newspaper to establish that it had been or would have been entitled to second class mailing privileges after 1996. This factor, therefore, could not reasonably have been “taken into consideration” by the Director when determining if Shop Wise was a newspaper within the meaning of N.J.S.A 54:32B-8.30.
The court is mindful of the Director’s argument that during the relevant period ADVO was engaged in providing advertising services and that Shop Wise was nothing more than a vessel for the distribution of the advertisements of ADVO’s customers. The evidence in the record firmly establishes that ADVO provided a variety of advertising services, including design, editing, targeting, and advice. It is also clear from the record that Shop Wise was distributed for years prior to the relevant period containing only advertising content and that after the relevant period a new owner of the publication reverted back to the all-advertising format. In addition, the record suggests that ADVO’s primary motivation during the relevant period was to generate revenue from advertising and advertising services and to create a vehicle for the distribution of its clients’ advertisements.
If the court were deciding this matter based only on the language in N.J.S.A. 54:32B-8.30, the Director’s arguments might well have greater appeal and meaning. However, N.J.A.C. 18:24-1.2(a) (2007), which the Director adopted, and which set forth a reasonable interpretation of the statute, recognized that a newspaper could have up to 90% of its pages covered with advertising and still qualify for the exemption. It is the Director who established this rather expansive, but reasonable, view of the extent to which a newspaper qualifying for the exemption could contain advertising content. The court cannot find that the Director’s interpretation of N.J.SA 54:32B-8.30, as found in N.J.A.C. 18:24-1.2(a) (2007), extended the exemption beyond the plain language of the statute. As a result, the Director’s regulation must control resolution of this case. ADVO was entitled to modify its practices to *518 bring Shop Wise within the regulatory framework established by the Director for an exemption in N.J.A.C. 18:24-1.2(a) (2007). The fact that ADVO was primarily motivated by a desire to make a profit from selling advertising does not negate application of the exemption, as nothing in the statute or regulation conditions the exemption on a newspaper being published solely or primarily for any particular purpose.
After the period that is relevant to this matter, the Director elected to amend N.J.A.C. 18:24-1.2 to change the definition of a newspaper for purposes of the Sales and Use Tax Act. The regulation now requires a newspaper to have the “main purpose” of distributing “news of current events (political, sports, entertainment, etc.)” and to contain “news of a general character and of a general interest.” N.J.A.C. 18:24-1.2 (2010). The court need not determine if the current regulation constitutes a reasonable interpretation of N.J.S.A. 54:32B-8.30, as it is not applicable to the periods before the court. The regulation, however, is evidence that the Director had the ability to craft a rule that reflects the position he asserted in this ease but did not do so during the relevant period. The public, including ADVO, was not put on notice of the Director’s more restricted view of the meaning of N.J.S.A. 54:32B-8.30 until after the period at issue here.
Given the court’s conclusion that ADVO satisfied the elements of N.J.A.C. 18:24-1.2 (2007) with its publication of Shop Wise during the relevant period, the court need not address plaintiffs estoppel argument or its First Amendment claims. Plaintiff is entitled to a refund of the sales tax it collected on advertising revenue during the period at issue consistent with N.J.S.A. 54:32B-20(a). Plaintiffs cross-motion for summary judgment is granted. The Director’s motion for summary judgment is denied. The Clerk of the Tax Court will enter Judgment reversing the Director’s final determination.

 In light of these conclusions, the court need not address the question of whether the Have You Seen Me? ® missing children insert constituted "information of general interest”, a "report[] of a current event[],” or an "article[]” within the meaning of N.J.A.C. 18:24-1.2 (2007).